**Gregory CALLIMANOPULOS,**
**Plaintiff,**

v.

**CHRISTIE'S INC., Defendant.**

**No. 09 Civ. 4631(WHP).**

United States District Court,
S.D. New York.

June 2, 2009.

Christopher G. Kelly, Esq., Holland & Knight LLP, New York, NY, for Plaintiff.

Jonathan L. Frank, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendant.

Kim Joel Landsman, Esq., Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Intervenor.

## MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Gregory Callimanopulos ("Callimanopulos") brings this action against Defendant Christie's Inc. ("Christie's") seeking a declaratory judgment that he entered into a binding contract with Christie's for the purchase of the painting "Grey" by Sam Francis (the "Work") and that he holds title to the Work, subject to his payment to Christie's of $3 million and any applicable fees or charges. Callimanopulos also brings a claim for breach of contract and seeks performance of the contract by transfer of title and possession of the Work.

On May 15, 2009, this Court granted a temporary restraining order enjoining Christie's from (1) disposing, altering, or changing any audio and/or video recordings of Christie's May 13, 2009 Post–War and Contemporary Art Evening Sale Auction (the "Auction"); and (2) completing the sale of the Work or transfer of title to any putative purchaser. On May 27, 2009, this Court granted a request by the putative purchaser, Eli Broad, to intervene in this action. Callimanopulos now moves for a preliminary injunction. For the following reasons, the motion is denied.

## BACKGROUND

Callimanopulos participated in the Auction by telephone. (Affidavit of Gregory Callimanopulos dated May 15, 2009 ("Callimanopulos Aff.") ¶ 1.) Valentina Casacchia ("Casacchia"), curator of Callimanopulos's

collection, and Heidi Waumboldt ("Waumboldt"), Callimanopulos's assistant, attended the Auction in person. (Callimanopulos Aff. ¶ 4.) Callimanopulos was connected by telephone to April Richon Jacobs ("Jacobs"), Christie's Co–Head of Evening Sale, who conveyed his bids to the auctioneer, Christopher Burge ("Burge"). (Callimanopulos Aff. ¶ 5.) Burge, who has been an auctioneer for over 34 years and has conducted more than 1,000 auctions, is Honorary Chairman of Christie's. (Affidavit of Christopher Burge dated May 22, 2009 ("Burge Aff.") ¶ 1.) Joanne Heyler ("Heyler"), the Director/Chief Curator of the Broad Art Foundation, attended the Auction as Eli Broad's representative. (Affidavit of Joanne Heyler dated May 22, 2009 ("Heyler Aff.") ¶¶ 1–2.) Both Broad and Callimanopulos had determined prior to the Auction to bid on the Work. (Heyler Aff. ¶ 4; Affidavit of Laura Paulson dated May 22, 2009 ("Paulson Aff.") ¶ 2.)

At the auction, Heyler was seated in the front row, to the right of Burge. (Heyler Aff. ¶ 3.) Heyler raised concerns about being seated in the front row because it can be a blind spot for the auctioneer. (Heyler Aff. ¶ 3; Paulson Aff. ¶ 3.) As a result, two Christie's employees—Brett Gorvey and Laura Paulson—paid attention to Heyler during the auction. (Paulson Aff. ¶ 3.) Jacobs was seated at a bank of telephones located along the side wall, many rows back and to the left of Burge. (Affidavit of April Jacobs dated May 22, 2009 ("Jacobs Aff.") ¶ 2.) Jacobs did not have a clear view of the first row of bidders. (Jacobs Aff. ¶ 2.) Gorvey and Paulson were standing on a raised platform facing the first row of seats to the right of Burge. (Affidavit of Brett Gorvey dated May 22, 2009 ("Gorvey Aff.") ¶ 2; Paulson Aff. ¶ 4.) Casacchia and Waumboldt sat in the front row. (Affidavit of Valentina Casacchia dated May 15, 2009 ("Casacchia Aff.") ¶ 3; Affidavit of

Heidi Waumboldt dated May 15, 2009 ("Waumboldt Aff.") 13.)

Bidding on the Work commenced at $1.3 million and, through Jacobs, Callimanopulos entered at $2.9 million. (Callimanopulos Aff. ¶ 7; Burge Aff. ¶¶ 4–5.) After Callimanopulos bid $3 million, Burge surveyed the room for other bids, before stating: "Sold to the phone for three million dollars" and dropping the hammer. (Callimanopulos Aff. ¶ 8; Burge Aff. ¶ 6.) Jacobs told Callimanopulos that they had secured the Work. (Callimanopulos Aff. ¶ 9.) However, seconds later, Jacobs informed Callimanopulos that Burge had re-opened the bidding and accepted a bid for $3.1 million. (Callimanopulos Aff. ¶ 10.) That bidder was Heyler. (Callimanopulos Aff. ¶ 10.) Callimanopulos protested the re-opening through Jacobs. After Burge rejected his challenge, Callimanopulos bid $3.15 million, with the intention of disputing the additional $150,000 later. (Callimanopulos Aff. ¶ 10.) However, after Heyler bid $3.2 million, Callimanopulos refused to bid further and Burge called the sale to Heyler. (Callimanopulos Aff. ¶ 10.)

According to Burge, at the same time that he called the sale to Callimanopulos, Christie's employees, including Gorvey, signaled to him that Heyler had raised her paddle prior to the fall of the hammer. (Burge Aff. ¶ 6; Gorvey Aff. ¶ 3.) Burge states that the use of spotters to signal to the auctioneer is common practice at auctions. (Burge Aff. ¶ 6.) Burge admits that he did not see Heyler's bid. (Burge Aff. ¶ 6.) Upon re-opening the bidding, Burge stated: "You all saw it, except for me." (Affidavit of Christopher G. Kelly dated May 27, 2009 ("Kelly Aff.") Ex. 1: Transcription of the Videotape of the Auction at 2.) He also stated: "3,100,000 in time, with the hammer." (Kelly Aff. Ex. 1 at 2.) Gorvey and Paulson confirm that Heyler had raised her paddle to bid prior to the

fall of the hammer. (Burge Aff. ¶ 3; Paulson Aff. ¶ 5.) The morning after the Auction, Jacobs conveyed to Callimanopulos that she believed he was the final bidder. However, she admits that from her vantage point she could not see whether or when Heyler placed her bid. (Jacobs Aff. ¶ 3; Affidavit of Jeffrey M. Dine dated May 15, 2009 ("Dine Aff.") Ex. 1: Email from Jacobs to Casacchia dated May 14, 2009.)

This Court has reviewed a video of the relevant portion of the Auction. (Affidavit of Sandra L. Cohen dated May 22, 2009, attaching DVD.) In the video, a woman seated in the front row can be seen raising her paddle to chest-height as Burge calls "fair warning" and then raising it above her head as Burge is bringing down the hammer. Burge recognizes the woman's bid a few seconds after striking the hammer. The video also confirms that it would have been difficult for Jacobs to see bidding from the front row.

Christie's Conditions of Sale, included in the catalog for the Auction, provide that:

> The auctioneer has the right at his absolute and sole discretion ... in the case of error or dispute, and whether during or after the sale, to determine the successful bidder, to continue the bidding, to cancel the sale or to reoffer and resell the item in dispute. If any dispute arises after the sale, our sale record is conclusive.

(Dine Aff. Ex. 2: Auction catalog Conditions of Sale ¶ 3(i).) The terms "error" and "dispute" are not defined in the Conditions of Sale. The Conditions of Sale also provide that "[s]ubject to the auctioneer's discretion, the highest bidder accepted by the auctioneer will be the buyer and the striking of his hammer marks the acceptance of the highest bid and the conclusion of a contract for sale between the seller

and the buyer." (Dine Aff. Ex. 2: Auction Catalog Conditions of Sale ¶ 3(j).)

## DISCUSSION

■ A party seeking a preliminary injunction must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied. *Time Warner Cable, Inc. v. DIRECTV. Inc.,* 497 F.3d 144, 153 (2d Cir.2007).

The Uniform Commercial Code (U.C.C.) which the parties agree governs this action, provides that:

> A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. Where a bid is made while the hammer is falling in acceptance of a prior bid the auctioneer may in his discretion reopen the bidding or declare the goods sold under the bid on which the hammer was falling.

N.Y. U.C.C. § 2–328. Thus, under the U.C.C. it is clear that while the fall of the hammer concludes a sale, where a bid is made while the hammer is falling, the auctioneer has the discretion to recognize that bid even after the hammer has fallen. Christie's Conditions of Sale is consistent with the U.C.C.

■ Here, Burge exercised his discretion and re-opened the bidding, seconds after striking the hammer. The videotape and two Christie's employees confirm that Heyler raised her paddle as Burge said "fair warning" and then raised it even higher as he brought down the hammer. While Plaintiff argues that Burge could not exercise his discretion because he did not see Heyler's bid himself, nothing in the plain language of the U.C.C. or Christ-

ie's Conditions of Sale prevents an auctioneer from relying on Christie's employees in the exercise of his discretion. Moreover, as a highly experienced auctioneer, Burge represents that it is the custom of auctioneers to rely on spotters. Callimanopulos presents no evidence that this is not the custom. Accordingly, no contract was formed between Callimanopulos and Christie's. Because Callimanopulos fails to raise sufficiently serious questions going to the merits to make them a fair ground for litigation, let alone a likelihood of success, Callimanopulos's motion for a preliminary injunction is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Gregory Callimanopulos's motion for a preliminary injunction is denied.

SO ORDERED.